Filed 7/18/24  P. v. Santiz CA5
Opinion following transfer from Supreme Court

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOEL SANTIZ,<br><br>    Defendant and Appellant. | F084188<br><br>(Kern Super. Ct. No. BF182234A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Judith K. Dulcich, Judge.

Hilda Scheib, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, and Jesica Y. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant and defendant Joel Santiz (defendant) was sentenced under the "One Strike" law for various sexual crimes he committed against children under the age of 14. He contends the charging document failed to provide adequate notice the court might impose terms of 25 years to life under Penal Code section 667.61, subdivision (j)(2)[1] of the "One Strike" law. We reverse the sentence pursuant to *In re Vaquera* (2024) 15 Cal.5th 706 (*Vaquera*) and remand for full resentencing.

## BACKGROUND

In an amended information, the Kern County District Attorney charged defendant with oral copulation or sexual penetration of Jane Doe #1, a child under 10 years old (count 1; § 288.7, subd. (b)), lewd or lascivious act upon Jane Doe #1, a child under 14 years old (count 2; § 288, subd. (a)), penetration of Jane Doe #1, a child under 14 years old, with a foreign object (count 3; § 289, subd. (j)), lewd or lascivious act upon Jane Doe #2, a child under 14 years old (count 4; § 288, subd. (a)), repeated sexual conduct with Jane Doe #3, a child under the age of 14 with whom defendant resided or had recurring access (count 5; § 288.5, subd. (a)), lewd or lascivious act upon Jane Doe #3, a child under the age of 14 (count 6; § 288, subd. (b)(1)), and oral copulation with Jane Doe #3, a child under the age of 14 (count 7; § 287, subd. (c)(1).) The amended information also alleged multiple victim enhancements (§ 667.61, subd. (e)(4)) as to counts 2, 4, 5, 6, and 7.

A jury convicted defendant of counts 1 through 5 and found true the multiple victim enhancement on counts 2, 4, 5. The jury acquitted defendant of counts 6 and 7 and found the multiple victim enhancements as to those counts to be untrue.

On March 22, 2022, the court sentenced defendant to 25 years to life for count 2, plus a consecutive 25 years to life term for count 4, plus a concurrent term of 25 years to

---

[1] All further undesignated statutory references are to the Penal Code unless otherwise stated.

life for count 5, plus a stayed (§ 654) term of 15 years to life on count 1, plus a stayed (*ibid.*) term of six years on count 3.

## FACTS

M.R.[2] is married to defendant. However, they separated and stopped living together in 2015. M.R. and defendant had a son together named G.S. M.R. also had a daughter, Jane Doe #3, but defendant is not her biological father. Jane Doe #3 was born in March 2009.

As of 2020, M.R. and defendant shared custody of their children, with defendant having them on the weekends.

When they were younger, M.R.'s niece Jane Doe #1, would come to stay with M.R. and defendant every summer.

### *Jane Doe #1*

Jane Doe #1 testified that she was born in April 2004. In 2013, when she was nine years old, she stayed with her aunt, defendant, and two cousins. Jane Doe #1 referred to defendant as her uncle at the time.

Jane Doe #1 remembered defendant touching her sexually two times in 2013. Specifically, he would put his fingers inside of her vagina.

The first time, it occurred in the early morning. Jane Doe #1 woke up to defendant standing beside her bed, touching her vagina. Afterwards, Jane Doe #1 told her brother but did not tell any adults. Over a week later, defendant rubbed her clitoris as they lie in bed.

The first time Jane Doe #1 told any adults about the incidents was in the summer of 2020 when she told her aunt, M.R. M.R. did not believe Jane Doe #1 because she was troubled, and her own mother and sisters said she was lying. Two months later, Jane

---

[2] M.R.'s name is suppressed to enhance privacy for the victims in this case.

Doe #1 first became aware of an investigation regarding defendant and her cousin, Jane Doe #3. Jane Doe #1's sister told her Jane Doe #3 had been molested.

For about two weeks, M.R. continued to let her children, including Jane Doe #3, go to defendant's house.

### Jane Doe #2

Jane Doe #2 was born in April 2008. Defendant is the brother of Jane Doe #2's stepdad.

Defendant lived at the same house as Jane Doe #2 for a period of time. Jane Doe #2 would help translate for defendant at work.

Defendant touched Jane Doe #2's vagina many times. These incidents would happen in bedrooms, the living room, the kitchen, and defendant's truck. Defendant would also touch Jane Doe #2's breasts, both under and over her clothing. When defendant touched Jane Doe #2's breasts, he told her she was "growing."

Sometimes, defendant would put his lips "in" Jane Doe #2's vagina and would use his tongue to "kiss" her vagina. Jane Doe #2 tried to close her legs, but defendant opened them. It hurt when defendant opened her legs. This occurred "probably, like, five times."

Jane Doe #2 did not tell her mother because she was scared. Jane Doe #2 lied to a police officer, saying defendant had only touched her leg. She lied because she was scared that she would have to tell her mother.

The first time Jane Doe #2 met the prosecutor in this case, she said she had more details she wanted to share. The prosecutor had Jane Doe #2 speak with an investigator. Jane Doe #2 told the investigator that defendant had touched her sexually. Jane Doe #2 then spoke with a lady who had her circle on a piece of paper the places defendant had touched her.

4.

### Jane Doe #3

Jane Doe #3 testified defendant would rub his penis on her vagina. Defendant would also take her clothes off and make "movements" with his fingers on her vagina. This would occur every weekend she went to his house.

Sometimes Jane Doe #3 would wake up to defendant touching near her private part. Jane Doe #3 would pretend she was waking up and would try to pull her pants up or turn around. When she tried to pull her pants up, defendant would push her down.

Defendant would put his fingers "a little bit" into her vagina. Defendant also "used his mouth." Jane Doe #3 would feel ejaculate on her body afterwards.

Jane Doe #3 felt like if she did anything to try to escape or tell anyone, he would hurt her. Jane Doe #3 testified defendant was a father to her and that she trusted him before all this started happening.

M.R. called police in August 2020 after a conversation with Jane Doe #3 regarding her not wanting to go over to defendant's house.

### Defendant's Interrogation

The transcript of defendant's interrogation was admitted into evidence. Defendant admitted to touching Jane Doe #3's vagina with his hand five or six times. However, he claimed to only touch the outside or "edges" of her vagina so that she would remain a virgin. Defendant also said he "used [his] lips" and his mouth two times. He put his tongue in her vagina one time. Defendant also let his penis touch her vagina one time, and he touched her breasts one time. Defendant also admitted to ejaculating on Jane Doe #3.

When asked if he had "ever done this" with other girls, defendant said he had touched "her" on the leg, apparently referring to Jane Doe #1. When asked if he touched Jane Doe #2, defendant said he had. He later said this occurred on three separate occasions. On one occasion, he touched her leg and her vagina over her underwear. Jane

Doe #2 closed her legs in response. On the second and third occasions, defendant touched Jane Doe #2's vagina under her underwear.

### *Dr. Musacco's Testimony*

The prosecution called psychologist Michael Musacco, Ph.D. as a witness. Child Sexual Abuse Accommodation Syndrome "is composed of five stages that actual victims experience that may be difficult for an adult to believe or understand." The first two stages are secrecy and helplessness, wherein a child is being secretly abused and they either feel incapable of escaping or are not aware that the situation is abusive. The third stage is accommodation where in the child "learn[s] to live with it somehow." The fourth stage is delayed or unconvincing disclosure. A child might not tell anyone about the abuse for years and even when they do it "comes out in fits and starts." The fifth stage is retraction where the child says they made up the abuse.

## DISCUSSION

### *Law*

Section 667.61, often referred to as the One Strike law, provides for mandatory prison sentences of 15 or 25 years to life for certain sex offenses committed under certain circumstances. (§ 667.61.) We will walk through the statutory structure by which section 667.61 accomplishes this, because it is pertinent to the issue raised on appeal.

In section 667.61, subdivision (c), the statute lists the sex crimes to which the statute applies – i.e., multiple types of rape, multiple types of lewd or lascivious acts, sexual penetration, sodomy, oral copulation, and continuous sexual abuse of a child. In subdivisions (d) and (e), the statute sets forth two categories of "circumstances" under which these crimes could be committed. For example, the defendant inflicted great bodily injury during the offense or committed the offense against multiple victims.

Section 667.1, subdivision (a) provides that if the defendant committed a listed sex crime under *one* of the circumstances listed in subdivision (d) or *two* of the circumstances listed in subdivision (e), they will receive a prison sentence of 25 years to life.

6.

Subdivision (j)(2) adds another instance where a 25-year-to-life sentence is mandatory: when the defendant committed a listed sex crime under *one* of the circumstances listed in subdivision (e) *upon a victim who is a child under 14 years of age*.

Pursuant to section 667.1, subdivision (b), if the defendant committed a listed sex crime under *one* of the circumstances listed in subdivision (e) – and the victim was 14 years of age or older – they will receive a prison sentence of 15 years to life.[3] (§ 667.61, subd. (b).)

Thus, the combined effect of these provisions is that the presence of only a single circumstance listed under section 667.1, subdivision (e) can lead to one of two prison sentences: 25 years to life if the offense was committed upon a child under 14 years of age (§ 667.1, subd. (j)(2)), otherwise 15 years to life (*id*., subd. (b)).

### *Pleading*

In our original opinion, we concluded that because the information alleged all of the factual predicates for imposing sentence under section 667.61, subdivision (j)(2), it was not a due process violation to impose sentence thereunder even though the information did not cite that statutory provision. The Supreme Court subsequently decided *Vaquera*, *supra*, 15 Cal.5th 706, and transferred the present matter back to this court for reconsideration.

"A defendant has a due process right to fair notice of any sentencing allegation that, if proven, will increase the punishment for a crime. [Citations.] In the sentencing enhancement context, the touchstone of fair notice is whether the accusatory pleading enables the defense to predict the sentence the defendant faces if convicted. To enable a defendant to make this prediction, an accusatory pleading must provide the defendant with fair notice of the factual basis on which the prosecution is seeking an increased punishment and of 'the potential sentence.' [Citation.]

---

[3] The statute also contains various exceptions. (See § 667.61, subds. (j), (l), (m).)

7.

"When the prosecution has not alleged a particular sentencing enhancement in connection with a specific count, a 'defendant is ordinarily entitled to assume the prosecution made a discretionary choice not to pursue the enhancement … and to rely on that choice in making decisions such as whether to plead guilty or proceed to trial.' [Citation.]  Since an accusatory pleading that fails to inform the defendant that the prosecution is pursuing a particular sentencing enhancement in connection with a specific count does not allow the defendant to predict the potential sentence, such a pleading does not provide fair notice."  (*Vaquera*, *supra*, 15 Cal.5th pp. 717–718.)

In the One Strike context, fair notice of intent to seek sentencing under section 667.61, subdivision (j)(2) can be conveyed by:  (1) briefly alleging *in the One Strike allegation* the factual circumstances on which it was relying, (2) citing "subdivision (j)(2) and referenc[ing] the charge in count 2 (§ 288, subd. (a), an essential element of which is that the victim was under 14 years old) and the multiple victim circumstance (§ 667.61, subd. (e)(4))," or (3) expressly specifying that the information sought 25 years to life.  (*Vaquera*, *supra*, 15 Cal.5th at p. 725.)  It is a fair notice violation when the information does not "specify that the prosecution was seeking 25 years to life on that count, cite to subdivision (j)(2), or otherwise make clear that the prosecution was seeking a longer sentence based on the victim's age."  (*Ibid*.)

### *Additional Facts*

In the present case, defendant was charged with multiple sex crimes listed in section 667.61, subdivision (c), including lewd and lascivious act upon a child under the age of 14 years (counts 2 and 4; § 288, subd. (a)), and continuous sexual abuse of a child (count 5; § 288.5, subd. (a)).  In all three of those counts, it was expressly alleged the victim was a child under the age of 14 years.

As to counts 2, 4, and 5, the information also alleged as follows:

"It is further alleged that in the commission of the crime … the defendant has been convicted in the present case or cases of committing an offense

8.

specified in section 667.61(c) of the Penal Code against more than one victim, within the meaning of Penal Code section 667.61(e)(4)."

The jury convicted defendant on counts 2, 4, and 5 (among others). The jury also found true the multiple victim enhancements to those counts. Those were worded as follows:

> "We, the Jury, empaneled to try the above entitled case, find it to be true that the defendant, JOEL SANTIZ, has been found guilty in the present case of committing an offense specified in Section 667.61(c) of the Penal Code against more than one victim, within the meaning of Penal Code section 667.61(e)(4), as alleged in the Second Count of the Information."

*Analysis*

Both parties concede that a fair notice violation occurred under *Vaquera*. The disputed issue is whether this violation was harmless.

The Attorney General argues defendant would not have acted differently pretrial (e.g., whether to seek a plea bargain) because his maximum sentences on counts 1, 2, 4, and 5, under subdivision (b) and (j)(2) would both have seen him in prison for all (or nearly all) of his natural life. If subdivision (j)(2) applied, and the court declined to stay any of the counts and imposed consecutive terms, defendant would face 90 years in prison (25 years on each of counts 2, 4, 5; and 15 years on count 1). If defendant was sentenced under subdivision (b), and the court declined to stay any of the counts and imposed consecutive terms, defendant would face 60 years in prison (15 years on each of counts 2, 4, 5; and 15 years on count 1). Given that defendant was 40 years old when he was charged, the Attorney General contends that "[b]oth sentences effectively guaranteed that appellant would spend the rest of his natural life in prison." Consequently, defendant would not have acted differently with respect to any plea bargain options had the information properly apprised him of his exposure.

However, we conclude that comparing only *maximum* exposure is inadequate to evaluate the likelihood defendant would have acted differently pretrial under the two scenarios. Instead, both scenarios involved a *range* of possible sentences, depending on

9.

the application of section 654 and the choice between concurrent or consecutive sentences. Under the section 667.61, subdivision (b) scenario, if the court chose to impose sentence on count 5 concurrently rather than consecutively and to stay sentence on count 1 under section 654 (both of which it actually did here), then the sentence would have been 30 years to life. Applying the same conditions to the section 667.61, subdivision (j)(2) scenario – which is what actually happened – defendant faced a sentence of 50 years to life. Thus, at the time of charging, defendant might have believed he faced a sentence of 30 to 60 years (to life), the lower end of which embodied the possibility of exiting custody at age 70. This is in contrast to an analogous range of 50 to 90 years under subdivision (j)(2).

Thus, we acknowledge that if *maximum* sentences are imposed, defendant is almost certain to die in custody in both scenarios. But if the *range* of possible sentences are considered, defendant would have at least the theoretical possibility of substantial time out of custody under section 667.61, subdivision (b) sentencing. And if we are trying to get into a defendant's mindset in the pretrial phase to determine whether he would have acted differently absent the error, we should consider the full range of possible sentences (as a defendant would). Because one scenario involved at least the possibility of exiting custody alive, while the other scenario contained only a miniscule possibility, we cannot say with certainty defendant would have acted the same in both scenarios. For this reason, we cannot find the error harmless as urged by the Attorney General.

As a result of *Vaquera* error, we will reverse the sentence. Defendant requests that "his sentences on counts two, four and five be reduced to 15-years-to-life." While it is true that the sentences on those counts must be 15 years to life rather than 25 years to life,

there are several additional sentencing factors to consider.  Consequently, we will remand for full resentencing.**4**

## DISPOSITION

The sentence is reversed and the matter remanded for full resentencing.  The court shall exercise its discretion as permitted by law as to all sentencing decisions, except that the trial court must impose 15 years to life terms – rather than 25 years to life terms – on counts 2, 4, and 5.  In all other respects, the judgment is affirmed.


POOCHIGIAN, Acting P. J.

WE CONCUR:


DETJEN, J.


SNAUFFER, J.

---

**4** When deciding to run the sentence on count 5 concurrent instead of consecutive, the trial court said, "I do believe the two consecutive sentences fit the crimes that this Court heard, and I do believe that is the appropriate sentence in this case."  It seems the court was likely making a "subjective determination of the value of a case and the appropriate aggregate sentence, based on the judge's experiences with prior cases and the record in the defendant's case." (*People v. Castaneda* (1999) 75 Cal.App.4th 611, 614.) Now that the length of terms on counts 2, 4 and 5 will be different, the court may choose to make a different decision regarding, for example, whether the sentence on count 5 will be concurrent or consecutive. We will leave that, and all other applicable sentencing decisions, to the sound discretion of the trial court.

11.